SHIVERS, Senior Judge.
These are consolidated appeals from judgments of conviction and sentences for mutiny or riot' at a correctional institution; resisting without violence; battery upon a correctional officer; aggravated assault upon a correctional officer; simple assault; and possession of contraband. Appellants raise three points on appeal, the first of which requires reversal and remand for a new trial.
Appellants were charged under multi-count informations with, among other offenses, instigating, attempting to cause, assisting, or conspiring to cause a mutiny, riot or strike at Cross City Correctional Institution in defiance of official orders, contrary to section 944.45, Florida Statutes. Prior to jury selection, the state filed a motion in limine seeking to exclude evidence of any events which occurred after 7:10 p.m. on the evening in question (the time at which the riot was allegedly quelled), including evidence of abuses perpetrated by correctional officers upon inmates, and specifically, upon appellant Black (as a result of which Black lost an eye). The record also contains several news articles submitted in support of a motion for change of venue revealing that a number of the correctional officers were administratively disciplined or convicted of criminal offenses in federal court as a result of their activities during the “aftermath.”
In support of its motion in limine, the state argued that events occurring during the aftermath were not relevant to events occurring during the riot. On the other hand, defense counsel contended that the events encompassing the riot and the aftermath occurred in a continuous sequence, and urged that if the defense could show that an officer either participated in the abuse of inmates, or that an officer stood by and did nothing while other officers abused inmates, such would be relevant to the officer’s credibility. Counsel for appellant Smiley added that he could show a continuing pattern of conduct on the part of the guards which would also be relevant to the credibility of the state’s witnesses. He also noted that while none of the officers who were convicted in federal court would be witnesses during appellants’ trial, some that were disciplined administratively did appear on the state’s witness list.
The trial court took the matter under advisement and revisited the issue during the testimony of the prison inspector who had conducted an investigation leading to the charges against eight inmates, including appellants. Again, the trial court refused to allow any evidence of events occurring in the aftermath.
The issue next arose during the presentation of the defense when counsel for Black verbally summarized the evidence he was to present through Black. According to his recitation, after a shotgun squad arrived during the riot, Black was placed in a holding cell. There he suffered minor injuries but, while being placed on the bus, was attacked by one or more guards, including David O’Steen. As a result of the attack, Black lost his right eye.
Counsel noted that all of the officers involved were under the command and responsibility of Colonel Dekle, who had earlier been called as a state witness. It was further observed that O’Steen was a named victim in the case, and it was asserted that the evidence was relevant to show bias and interest on the part of the state’s witnesses. Defense counsel pointed out that Dekle had been sanctioned by the Department of Corrections and transferred to another institution due to his failure to have his officers under control. In rebuttal, the state argued again that those events occurred after the riot, and noted that O’Steen had not been called as a state witness. The court referenced its earlier ruling and stated it would admit no testimony concerning events that occurred during the aftermath.
In appealing the trial court’s decision to exclude any evidence relating to the riot’s aftermath, appellants point out that the instant case involved a classic “swearing *1194 match,” and that the defense rested on theories of mistaken identity and a suggestion that the officers were not telling the truth. Both appellants maintained that the only incorrect thing they may have done was not to return immediately to their dorms when first ordered to do so. They denied possessing any weapons or assaulting any officers. Although acknowledging that other inmates may have possessed weapons or may have in fact struck correctional officers, they nonetheless asserted that any touching of the officers by them were responses to aggressive actions perpetrated by the officers. Thus, appellants argue that the excluded testimony was relevant to both the credibility of the officers and to their right to present evidence in support of their defense. In so arguing, appellants submit that the decision in Diaz v. State, 597 So.2d 368 (Fla. 3d DCA 1992), is on point. We agree.
In Lavette v. State, 442 So.2d 265 (Fla. 1st DCA 1983), this court admonished that
[t]he defense should be allowed wide latitude to demonstrate bias or possible motive for a witness’s testimony.... [citations omitted]. Any evidence tending to establish that a witness is appearing for the state for any reason other than to tell the truth should not be kept from the jury_ [citation omitted].
Id. at 268. As urged by appellants, certainly Colonel Dekle, who had been sanctioned as a result of the event, could be biased against appellants; yet, by virtue of the trial court’s ruling on the state’s motion in limine, the jury did not learn of this discipline.
Diaz v. State illustrates the dilemma in which a ruling such as the one under review places the defendant. That case involved circumstances similar to those in the instant ease, and the Third District essentially observed that the excluded testimony concerning latter portions of a “melee at the Dade County Jail” were admissible both to give the jury a complete picture of the “entire inseparable course of events,” and, “more important, because the serious injuries [Diaz] had sustained at the hands of fellow corrections officers provided a clear motivation” for the correctional officer to testify “that Diaz was alone responsible for their being inflicted.” 597 So.2d at 368. Thus, the court was prompted to observe:
The real possibility that the battery charges against Diaz were brought, and testified to, on the basis that the good offense that they presented might well be the best defense to a substantial claim of police brutality should not have been kept from the jury.
597 So.2d at 368-69.
Here, appellants argue convincingly that it is at least questionable whether the riot and the aftermath could be viewed by the jury as a continuous series of events. Moreover, their point is well-taken that Colonel Dekle was significantly involved in the conduct of the officers both during and after the riot. Certainly, the credibility of his testimony alone would be subject to impeachment on the basis of his involvement in the aftermath. At the very least, the trial court’s exclusion of all testimony and evidence relating to the aftermath deprived the jury of the complete picture of the events relative to appellants’ defense.
For the foregoing reasons, the trial court abused its discretion in totally excluding this evidence on the basis that it was completely irrelevant to any issues raised in the trial. Consequently, we reverse appellants’ convictions and remand for a new trial. For that reason, we need not reach appellants’ remaining points.
REVERSED and REMANDED for a new trial.
BOOTH and MINER, JJ., concur.